```
 1  LUBIN & ENOCH, P.C.
    Nicholas J. Enoch
 2  State Bar No. 016473
    Jarrett J. Haskovec
 3  State Bar No. 023926
    349 North Fourth Avenue
 4  Phoenix, Arizona 85003-1505
    Telephone: (602) 234-0008
 5  Facsimile: (602) 626-3586
    Email: nicholas.enoch@azbar.org
 6
    WARD, KEENAN & BARRETT, P.C.
 7  Gerald Barrett
    State Bar No. 005855
 8  3838 North Central Avenue, Suite 1720
    Phoenix, Arizona 85012
 9  Telephone: (602) 279-1717
    Facsimile: (602) 279-8908
10  Email: gbarrett@wardkeenanbarrett.com

11
    Attorneys for Plaintiffs
12
                IN THE UNITED STATES DISTRICT COURT
13
                    FOR THE DISTRICT OF ARIZONA
14
```

| | |
|---|---|
| RONALD L. STONE, a single man; and FRANCISCO BÉRRIOS, JR., a single man,<br><br>     Plaintiffs,<br><br>v.<br><br>MORAR and USHABEN AHIR, husband and wife; CAPITOL HOSPITALITY, an Arizona Limited Liability Company; and KM INNKEEPERS, an Arizona Limited Liability Company,<br><br>     Defendants. | No.<br><br>**COMPLAINT AND DEMAND FOR JURY** |

**NOW COME** the Plaintiffs, Ronald L. Stone ("Stone") and Francisco Bérrios, Jr. ("Bérrios") (hereinafter collectively referred to as "Plaintiffs"), by and through their attorneys, Lubin & Enoch, P.C. and Ward, Keenan & Barrett,

P.C., bringing this action pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), and, pursuant to this Court's supplemental jurisdiction set forth at 28 U.S.C. § 1367, the Arizona Wage Act, A.R.S. § 23-350, *et seq.*, and the Arizona Minimum Wage Act, A.R.S. § 23-363, *et seq*.

## INTRODUCTION

1.  Plaintiffs are former and current employees of Defendants Morar and Ushaben Ahir (hereinafter collectively referred to as "Ahir Defendants") and their companies, Capitol Hospitality, L.L.C. ("Capitol") and KM Innkeepers, L.L.C. ("KM").  The Defendants provided employment and housing to Plaintiffs, U.S. military veterans who had previously been homeless, at various times between December 2008 and the present.  Plaintiffs primarily worked for Defendants as front desk attendants or clerks at the Sandman Hotel in Phoenix, Arizona.  Plaintiffs allege that Defendants have willfully contravened the right of Plaintiffs to be compensated for all wages and overtime due pursuant to these employment relationships, in violation of, *inter alia*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§206-207 and Arizona statutes regarding the payment of wages, A.R.S. §§23-351(C) and 363(A).

2.  Despite being the target of administrative investigations, Defendants have willfully disregarded their obligations under the law and have steadfastly and

obstinately avoided providing Plaintiffs the compensation they are due.

**PARTIES**

3. Plaintiffs are both former or current employees of Defendants as defined in 29 U.S.C. § 203(e)(1) and A.R.S. § 23-350(2) who are or were engaged in commerce or in the production of goods for commerce.

4. Both of the Plaintiffs reside in Phoenix, Arizona.

5. The Ahir Defendants are now, and at all times relevant hereto have been, husband and wife, constituting a marital community under the laws of the State of Arizona. The acts engaged in by the Ahir Defendants were performed as agents, and for the benefit, of the marital community.

6. Upon information and belief, the Ahir Defendants are residents of Phoenix, Arizona, and have been for all times relevant to this proceeding.

7. Both of the Ahir Defendants are an "employer" as defined in 29 U.S.C. § 203(d) and A.R.S. §§ 23-350(3) and 362(B).

8. Capitol is an Arizona limited liability company with its principal place of business being in Phoenix, Arizona. Capitol owns and does business as the Sandman Motel, which is located at 2120 W. Van Buren St., Phoenix, Arizona.

9. Ahir Defendants are the sole members of Capitol, and Morar Ahir (also known as "Steve Ahir") is also the primary manager of Capitol. Ahir Defendants, and Morar Ahir

1 in particular, exercise managerial responsibilities and
2 substantial control of the terms and conditions of the
3 employees' work.  Among other things, Morar Ahir is
4 primarily responsible for hiring and firing employees,
5 supervising and controlling employee work schedules and
6 conditions of employment, determining the rate and method of
7 payment, and maintaining any employment records that may
8 exist.  Whenever Morar Ahir was not able to be present at
9 the Sandman Motel, another member of his family, including
10 Johnny Ahir, would occasionally handle managerial and
11 supervisory functions, such as supervising and directing
12 employees, paying employees, and counting drawers, in his
13 stead and under his direction.

14    10.  Capitol is an "employer" as defined in 29 U.S.C. §
15 203(d) and A.R.S. §§ 23-350(3) and 362(B).

16    11.  Upon information and belief, Capitol was not only
17 influenced and governed by the Ahir Defendants, but there
18 was such a unity of interest and ownership that the
19 individuality, or separateness, of the Ahir Defendants and
20 Capitol had ceased to exist.

21    12.  Upon information and belief, the facts are such
22 that an adherence to the fiction of the separate existence
23 of the Ahir Defendants and Capitol would, under these
24 particular circumstances, sanction a fraud or promote
25 injustice.

26    13.  KM is an Arizona limited liability company with
27 its principal place of business being in Phoenix, Arizona.

28

4

KM owns and does business as the Western Lodge, which is located at 3725 E. Van Buren St., Phoenix, Arizona. As was the case with Capitol, Ahir Defendants are the sole and exclusive members of KM, and Morar Ahir is the manager of the lodge. Ahir Defendants exercise the same managerial responsibilities and substantial control with respect to KM and its employees as is set forth in paragraph nine (9), *supra*.

14. KM is an "employer" as defined in 29 U.S.C. § 203(d) and A.R.S. §§ 23-350(3) and 362(B).

15. Capitol and KM perform related activities through unified operation and/or common control for a common business purpose and therefore constitute a single "enterprise" for purposes of 29 U.S.C. § 203(r). More specifically, Ahir Defendants jointly own, control, and operate the Sandman Motel and the Western Lodge for the purpose of renting rooms to members of the public for a charge. Among other factors, the employees of Capitol and KM have worked and assisted at the other motel/lodge from time to time, both are run by the same management, common addresses are often used for purposes of the mail, and the Western Lodge's address is given as the address for the statutory agent of Capitol. Furthermore, upon information and belief, the employees of the enterprise are engaged in commerce or in the production of goods for commerce and/or handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and the

enterprise's annual gross volume of sales or business done is not less than $500,000.

## JURISDICTION AND VENUE

16.  As to the First and Second Claims for Relief, *infra*, jurisdiction is proper pursuant to 28 U.S.C. § 1331.

17.  The state law-based claims set forth in the Third and Fourth Claims for Relief are properly within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

18.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

**Plaintiffs' Circumstances Prior to Employment and Job Offer**

19.  Plaintiffs are both formerly homeless veterans of the U.S. military who, immediately prior to commencing their work for Defendants, lived in housing facilities provided by United States Veterans Initiative ("U.S. Vets").

20.  U.S. Vets is a non-profit organization that assists homeless and at-risk military veterans through the provision of housing, counseling, career development, and comprehensive support.  Upon information and belief, the U.S. Vets housing facility in Phoenix, at which Plaintiffs had lived, has had at all times pertinent hereto a several month-long waiting list for veterans seeking housing.

21.  Upon information and belief, Morar Ahir approached U.S. Vets in or about November or December 2008 in order to secure employees for the Sandman Motel, which was about to

re-open in December 2008 under new ownership, and for properties owned by other members of his family.

22. In or about mid- to late November, 2008, Stone met with Morar Ahir and U.S. Vets counselor Al Edwards ("Edwards") concerning a potential job at the Sandman Motel as a desk clerk. Morar Ahir offered Stone the clerk job with pay at a fixed weekly salary of $100 per week plus an apartment at the Sandman Motel. Stone was required to live at the Sandman Motel as a term and condition of employment and to move in immediately upon acceptance of the job offer.

23. In or about mid-December, 2008, Bérrios likewise met with Morar Ahir and Edwards concerning a potential job at the Sandman Motel as a desk clerk. Morar Ahir offered Bérrios the clerk job with pay at a fixed weekly salary of $100 per week plus a room at the Sandman Motel. Bérrios was also required to live at the Sandman Motel as a term and condition of employment and to move in immediately upon acceptance of the job offer.

24. In the course of both Stone's and Berrios' interviews with Morar Ahir, U.S. Vets counselor Edwards encouraged Stone and Berrios to take the jobs with the attendant provision of housing, notwithstanding the extremely low offered rate of pay. Among other things, Edwards told each of the Plaintiffs that "we do a lot of business with these guys" (referring to the Ahir family), that they are "nice guys," and that it would be "smart to take advantage of this" opportunity.

25.     Feeling a sense of gratitude to U.S. Vets and an obligation to accept, Stone and Bérrios each accepted the job offer extended to them following the interviews and moved into the Sandman.  Stone began working on or about December 5, 2008, as the day-shift desk clerk, and Bérrios began working on or about December 18, 2008, as the night-shift desk clerk.

26.     Upon information and belief, several veterans have been referred by U.S. Vets to work at the Sandman Motel and other properties owned by members of the Ahir family.

**Plaintiffs' Employment with Defendants and Compensation**

27.     Plaintiffs allege that Defendants failed to pay all wages due for work performed between December 2008 and the present, including failing to pay them each a minimum wage or applicable overtime pay.

28.     Stone was continuously employed by Defendants from December 5, 2008, until October 16, 2009, when he was separated from his employment.  Although Stone principally worked and lived at the Sandman Motel while employed by Defendants, Stone also worked and lived at the Western Lodge.  Stone moved into the Western Lodge for a three-day period beginning on December 2, 2008, prior to beginning work a the Sandman and again moved into and worked for approximately two weeks in mid-2009 at the Western Lodge while the Sandman Motel was undergoing renovations.

29.     Bérrios has been continuously employed by Defendants from December 18, 2008, through the present date.

Bérrios worked and lived exclusively at the Sandman Motel during this time.

30. Plaintiffs worked exclusively for Defendants throughout their respective periods of employment. As desk clerks, Plaintiffs' primary duties consisted of renting rooms to guests, supplying various amenities to guests, ensuring compliance with the rental terms, providing a degree of security, and conducting credit card transactions.

31. For the entire duration of their employment with Defendants, each Plaintiff was scheduled to work, and did work, at least six (6) twelve-hour (12-hour) days per week, or seventy-two (72) hours per workweek. While both Plaintiffs occasionally were called upon to work additional time during certain weeks, Stone in particular remained on-call for most of the rest of the week and was called in to work occasionally during the night shift or on his day off in order to address emergencies and provide other assistance, among other things.

32. Upon information and belief, prior to 2009 or 2010, no time sheets or records required to be kept pursuant to 29 U.S.C. § 211 and/or 29 C.F.R. Part 516, specifically including 29 C.F.R. § 516.2(a), were maintained by Defendants with respect to Plaintiffs' employment.

33. For the entire period in which he was employed by Defendants, Stone earned $100 per week and was paid a total of $200 the first (1st) and sixteenth (16th) of every month. Upon information and belief, Defendants failed to withhold

any portion of Stone's pay for tax purposes.  When Stone inquired about the apparent lack of withholdings, Morar Ahir advised Stone that his (Ahir's) accountants were "working on it," implying that appropriate withholdings would be made in the future.  Morar Ahir paid Stone by checks drawn from the account of "Capitol Hospitality, LLC, dba Sandman Hotel" for approximately the first three to four months of his employment.  Thereafter, he was paid by cash, and the payments were memorialized on cash receipts originally bearing the banner of "Western Lodge," such banner having been stricken and replaced with a handwritten "Sandman Motel."

34.  Bérrios' pay varied throughout his employment with Defendants.  Initially, although Bérrios had been promised $100 per week, or $200 per pay period, Bérrios only received $180 every two weeks from December 2008 until approximately January 2009.  According to Morar Ahir, the difference of twenty dollars ($20) was retained by Defendants as "withholdings."  Upon information and believe, Defendants in actuality failed to withhold required amounts.  From approximately February 2009 to December 2009, Defendants paid Bérrios the full $200 every two weeks.  Thereafter, effective January 2010, Defendants reduced Berrios' fixed weekly salary to seventy-five dollars ($75), or one-hundred fifty dollars ($150) every two weeks, purportedly because Defendants could no longer afford to pay him the full, previously-agreed amount.  Bérrios continues to be paid this

reduced amount at present. During the entire duration of his employment, Bérrios was paid by cash on the first (1st) and sixteenth (16th) of every month. The payments were memorialized on cash receipts in the same manner as set forth in the preceding paragraph.

35. As a term and condition of their employment, Plaintiffs were required to live on-site at the Sandman Motel. Each received and stayed in a single room. The rooms Plaintiffs and other employees received were the smallest rooms available at the Sandman Motel in terms of square footage and also offered the fewest amenities. Plaintiffs received no meals from Defendants during their employment.

36. At all times pertinent hereto, the daily rate for a single room for one to two guests at the Sandman ranged from forty to forty-five dollars ($40 - $45), inclusive of any applicable taxes and fees. Upon information and belief, the weekly rate (including any applicable taxes and fees) for a single room for one to two guests at all relevant times ranged from approximately one hundred twenty-five to two hundred dollars ($125 - $200).

37. Even though Plaintiffs' rooms were the smallest available and offered the fewest amenities and notwithstanding the lower rates charged to guests, Morar Ahir informed Bérrios that he (Ahir) valued Bérrios' room at $55 per day (ostensibly for purposes of compensation).

38. During his employment, whenever Stone raised compensation- or housing-related concerns to Morar Ahir, Ahir would make statements to the effect that "I've got 100 other people who would love to have your job."

39. During 2009 and 2010, Stone contacted and provided information to various federal and state agencies charged with ensuring compliance with employment-related laws and policies. Among other agencies and oversight bodies, Stone was in contact the U.S. Department of Labor and the Arizona Department of Economic Security concerning issues pertaining to pay and unemployment benefits at the Sandman Motel, among other things.

40. Following several such contacts and reports, Defendants, acting through Morar Ahir, terminated Stone's employment on October 16, 2009, indicating that he (Stone) was being let go because business was slow, but later informing other employees that Stone had quit.

41. The U.S. Department of Labor conducted an investigation beginning in or about late 2009 and continuing into 2010. Upon information and belief, the Department of Labor concluded that the Sandman Motel was likely not in compliance with federal minimum wage and overtime requirements.

42. The Department of Labor investigation included an on-site inspection at the Sandman, for which, upon information and belief, Defendants were given two days' advance notice. After receiving the notice but prior to the

12

inspection, Defendants met with employees, including Bérrios, in order to instruct them as to what they should say to inspectors.  Bérrios was instructed to say that he worked four (4) five-hour (5-hour) days at the Sandman.

43.  Since the inspection, Defendants have instructed Bérrios to fill out false log sheets indicating that he works four (4) five-hour (5-hour) days, or twenty (20) hours per week, with the implicit threat that he would be fired and would be left with no probable alternative but to live on the street if he did not comply with these instructions.

44.  Following the 2009 tax year, the Sandman Motel issued 1099-MISC forms to each of the Plaintiffs.  The 1099 issued to Stone indicated that he received $19,750 in "[n]onemployee compensation" in 2009.  The 1099 issued to Bérrios likewise indicated that he (Bérrios) earned $24,820 in "[n]onemployee compensation" that same year.  Upon information and belief, none of the Defendants has ever issued either Plaintiff a W-2 form for tax purposes.

**FIRST CLAIM FOR RELIEF**
**Violation of FLSA Overtime Compensation Standard**

45.  Defendants have willfully failed to compensate Plaintiffs for overtime hours they worked as required under 29 U.S.C. § 207.  Plaintiffs are entitled to receive compensation at a rate of one and one-half times (1½ x) the regular wage rate for any hours worked for the Defendants in excess of forty hours in any week plus liquidated damages pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**Violation of FLSA Minimum Wage Standard**

46. Defendants have willfully failed to pay wages due Defendants, in violation of the federal minimum wage law, 29 U.S.C. § 206. Plaintiffs are entitled to recover all unpaid wages and liquidated damages pursuant to 29 U.S.C. § 216(b).

**THIRD CLAIM FOR RELIEF**
**Violation of Arizona Minimum Wage Act**

47. Defendants have willfully failed to pay wages at the rate of the Arizona Minimum Wage, in violation of the Arizona Minimum Wage Act, codified at A.R.S. § 23-363(A). Plaintiffs are entitled to recover the balance of the wages owed, including interest thereon, and an additional amount equal to twice the underpaid wages pursuant to A.R.S. § 23-364(G).

**FOURTH CLAIM FOR RELIEF**
**Violation of Arizona Wage Law**

48. Defendants have willfully failed to pay wages to the Plaintiffs for labor performed as required pursuant to A.R.S. § 23-351(C).

49. Plaintiffs are entitled to recover treble the amount of wages unpaid under Arizona law pursuant to A.R.S. § 23-355(A).

50. As this Court has concluded previously, the treble damages provision set forth in A.R.S. § 23-355(A) may be applied to treble a liquidated damages award received under the FLSA pursuant to this Court's supplemental jurisdiction.

*Davis v. Jobs for Progress*, 427 F.Supp. 479, 483 (D. Ariz. 1976).

**PRAYER**

**WHEREFORE**, Plaintiffs pray that they recover from Defendants the following:

1. An award of unpaid overtime in an amount appropriate to the proof adduced at trial pursuant to 29 U.S.C. §§ 207 and 216(b).
2. An award of unpaid minimum wages in an amount appropriate to the proof adduced at trial pursuant to 29 U.S.C. §§ 206 and 216(b);
3. An award of liquidated damages regarding ## 1 and 2, *supra*, in an amount appropriate to the proof adduced at trial pursuant to 29 U.S.C. § 216(b);
4. An award of treble the sum of unpaid wages, and liquidated damages set forth in # 3, *supra*, pursuant to A.R.S. § 23-355(A);
5. Pre-judgment and post judgment interest on unpaid back wages;[1]
6. Attorneys' fees pursuant to 29 U.S.C. § 216(b), A.R.S. §§ 12-341.01, 671(A) and 23-364(G);
7. Court costs and costs of litigation pursuant to 29 U.S.C. § 216(b) and A.R.S. §§ 12-341, 671(A) and 23-364(G); and

---

[1] *See, e.g., Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir. 1986).

8. Such other and further equitable relief as the Court deems just.

**JURY DEMAND**

Plaintiff further demands a trial by jury on all issues in this matter.

RESPECTFULLY SUBMITTED this 12th day of April, 2011.

        LUBIN & ENOCH, P.C.
        WARD, KEENAN & BARRETT, P.C.


        s/ Nicholas J. Enoch
        By: Nicholas J. Enoch, Esq.
        Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of April, 2011, I electronically transmitted the attached Complaint to the U.S. District Court Clerk's office using the CM/ECF System for filing.


s/Danette Valencia

F:\Law Offices\client directory\AIAWJ\012\Pleadings\2011 04 12 Stone complaint.wpd